IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HOWARD NATHANSON, et al., | |
| Plaintiffs, | |
| v. | Case No. 2:22-cv-02328-HLT-RES |
| TORTOISE CAPITAL ADVISORS, L.L.C., et al., | |
| Defendants. | |

**MEMORANDUM AND ORDER**

This is a derivative action brought by Plaintiffs Howard Nathanson and Gus Gordon on behalf of Tortoise Energy Infrastructure Corp. and Tortoise Midstream Energy Fund, Inc. (collectively the "Funds"). Defendants are the Funds' directors and an investment advisory firm. Plaintiffs allege that Defendants' over-reliance on leverage led to significant financial losses in 2020. Defendants move to dismiss on grounds of forum non conveniens, lack of pre-suit demand under Federal Rule of Civil Procedure 23.1, and failure to state a claim. Doc. 28. Because a forum-selection clause mandates that this action be brought in Maryland, the Court grants the motion to dismiss under the doctrine of forum non conveniens.

**I.    BACKGROUND**

The Funds are closed-end investment companies that invest in the energy industry. Doc. 1 at ¶¶ 1-2, 17. They each use significant leverage to increase their investable assets, which refers to the difference in the value of the total investment portfolio and the value of capital contributed by investors. *Id.* ¶ 22. Leverage is obtained by issuing senior notes, preferred stock, and by borrowing under a credit facility. *Id.* ¶ 23. This allows the Funds to purchase more securities than they would ordinarily be able to. *Id.*

The Funds are managed by a Board of Directors and Tortoise Capital Advisors, L.L.C. ("Tortoise"), the defendants in this case. *Id.* ¶ 2. The Board's responsibility is identifying material risks in operating the Funds, managing the Funds' risk, and evaluating whether various policies, procedures, and controls are working to mitigate known risks. *Id.* ¶ 33.

Tortoise is an investment advisory firm. *Id.* ¶ 34. Tortoise manages the Funds' day-to-day operations and their securities portfolios pursuant to Investment Advisory Agreements ("Agreements"). *Id.* ¶ 36. Under the Agreements, Tortoise agreed that it "shall be liable to the [Funds] for any loss, damage, claim, cost, charge, expense or liability resulting from the willful misconduct, bad faith or gross negligence or disregard by [Tortoise] of [Tortoise's] duties or standard of care, diligence and skill set forth in this Agreement." *Id.* ¶ 37. Tortoise is compensated 0.95% of the Funds' total assets. *Id.* ¶ 38. This includes leveraged assets. *Id.* ¶ 52.

In public filings, Tortoise and the Board stated it was policy to use leverage representing approximately 25% of total assets. *Id.* ¶ 55. But since 2017, the Funds' use of leverage has exceeded 30%. *Id.* ¶ 57. In 2019, it approached nearly 40%. *Id.* ¶ 58. The increased reliance on leverage increased the Funds' risk of a liquidity crisis. *Id.* ¶ 63. Different forms of leverage require certain asset-coverage requirements. *Id.* ¶ 46. If these requirements are violated, the Funds may be forced to sell securities to generate cash. *Id.* ¶ 47. This may occur in a declining market and can cause permanent losses. *Id.* ¶¶ 47-48.

Plaintiffs generally allege that, throughout 2019, Tortoise's leverage decisions fared poorly, causing a decline in returns. *Id.* ¶ 69. The Board was aware but took no action to rectify the situation. *Id.* ¶¶ 70-78. This left the Funds vulnerable to a market downturn. *Id.* ¶ 79.

In 2020, the pandemic and other global factors caused a steep drop in energy prices. *Id.* ¶ 81. This caused the Funds to fall out of compliance with asset-coverage requirements. *Id.* As a

result, Tortoise sold a significant amount of the Funds' securities at a loss. *Id.* ¶ 82. By the end of the first quarter of 2020, the Funds collectively reported losses of over a billion dollars. *Id.* ¶ 84. The Funds' performance by the end of 2020 was comparatively worse than most similar entities. *Id.* ¶ 87.

Despite this poor performance, the Board did not impose any mitigation efforts and in fact renewed Tortoise's agreement for another year. *Id.* ¶¶ 100-01. Plaintiffs contend that the Board subsequently enacted certain defensive measures to prevent stockholders from electing new directors, which protected the current Board and Tortoise. *Id.* ¶¶ 106-07. The Board also failed to engage with a party seeking to purchase the Funds' claims against Tortoise. *Id.* ¶¶ 111-12.

Plaintiffs bring derivative clams alleging a breach of fiduciary duty by the Board and Tortoise. *Id.* ¶ 116. In Count 1, Plaintiffs seek recission of the Agreements under Section 215 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-15. *Id.* ¶¶ 127-31. In Count 2, Plaintiffs allege a breach of fiduciary duty under Maryland law. *Id.* ¶¶ 132-45.

**II.   ANALYSIS**

Defendants move to dismiss the case for various reasons, including for forum non conveniens, lack of pre-suit demand under Federal Rule of Civil Procedure 23.1, and failure to state a claim. Because the Court finds that the case should be dismissed for forum non conveniens, it focuses on that analysis and does not reach Defendants' other arguments.[1]

Defendants' forum non conveniens argument is based on the Funds' bylaws, which designate the exclusive forum for certain litigation. *See* Doc. 29-9 at 11; Doc. 29-10 at 10. The relevant provisions in the bylaws, which are identical, state:

---

[1] The Funds (Tortoise Energy Infrastructure Corp. and Tortoise Midstream Energy Fund, Inc.) are nominal defendants. They have filed a notice of joinder in the motion to dismiss based on forum non conveniens and based on Plaintiffs' failure to make pre-suit demand. Doc. 30; *see also* Doc. 38 (notice of joinder in reply).

> Unless the Corporation consents in writing to the selection of an alternative forum, the Circuit Court for Baltimore City, Maryland, or if that Court does not have jurisdiction, the United States District Court for the District of Maryland, Northern Division, shall be the sole and exclusive forum for . . . (b) any derivative action or proceeding brought on behalf of the Corporation, other than actions arising under federal securities laws, [or] (c) any action asserting a claim of breach of any duty owed by any director or officer or other employee of the Corporation to the Corporation or to the stockholders of the Corporation . . . . None of the foregoing actions, claims or proceedings may be brought in any court sitting outside the State of Maryland unless the Corporation consents in writing to such court.

Doc. 29-9 at 11. Defendants argue that Plaintiffs' derivative claims can only be brought in Maryland. Plaintiffs argue the forum-selection clauses don't apply because this action arises under federal securities law, which is an express carve-out under subsection (b). Doc. 34 at 26.

Based on these arguments, the Court must first "determine whether the forum-selection clause controls." *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir. 2019); *DML Bakeries, Inc. v. Choice Prod. USA, LLC*, 2020 WL 8181704, at *2 (D. Kan. 2020) ("Therefore, before weighing the various factors associated with the forum non conveniens analysis, the Court first addresses the applicability of the Management Agreement's forum-selection clause."). If a clause applies, the party resisting enforcement has a heavy burden of showing that the provision is invalid due to fraud or overreaching, or that it would be unreasonable or unjust to enforce the provision. *K.R.W. Constr., Inc. v. Stronghold Eng'g Inc.*, 598 F. Supp. 3d 1129, 1136 (D. Kan. 2022). Forum-selection clauses are presumptively valid. *Id.*

If a valid forum-selection clause applies and points to a state or foreign court, the court applies the doctrine of forum non conveniens. *Kelvion, Inc.*, 918 F.3d at 1091; *see also Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine

4

of forum non conveniens.").[2] A motion to dismiss based on forum non conveniens is typically analyzed under a two-step process. "First, there must be an available and adequate alternative forum. Second, public and private interest factors must weigh strongly in favor of litigation in that alternative forum." *DML Bakeries, Inc.*, 2020 WL 8181704, at *3. However, if a forum-selection clause applies, the second step of the analysis focuses only on the public-interest factors, and the plaintiff's choice of forum carries no weight. *Atl. Marine Const. Co.*, 571 U.S. at 63-64. A valid forum-selection clause will control in all but the most exceptional cases. *Id.*

### A. The forum-selection clauses apply and are enforceable.

"The scope of a forum-selection clause is evaluated according to ordinary principles of contractual interpretation." *Kelvion, Inc.*, 918 F.3d at 1092; *see also Kansas Heart Hosp., L.L.C. v. Idbeis*, 184 P.3d 866, 883 (Kan. 2008) ("[C]orporate instruments such as charters and bylaws are interpreted in the same manner as other contracts."); *Tackney v. U.S. Naval Acad. Alumni Ass'n, Inc.*, 971 A.2d 309, 318 (Md. 2009) ("A corporation's bylaws are construed under the principles governing contract interpretation."). The Court therefore starts with the plain language of the provisions. *See Kelvion, Inc.*, 918 F.3d at 1092-93.[3]

---

[2] The clauses state that "the Circuit Court for Baltimore City, Maryland, or if that Court does not have jurisdiction, the United States District Court for the District of Maryland, Northern Division, shall be the sole and exclusive forum for" certain disputes. Doc. 29-9 at 11. Neither party suggests that Maryland state court lacks jurisdiction over any of the claims in this case, nor do they suggest that a transfer to Maryland federal court would be appropriate. Accordingly, if the forum-selection clauses apply, the appropriate procedure is dismissal under the doctrine of forum non conveniens, rather than transfer under 28 U.S.C. § 1404. *See Atl. Marine Const. Co.*, 571 U.S. at 60.

[3] Neither party discusses what law applies to the interpretation of the bylaws in a case arising under federal-question jurisdiction. The bylaws do not appear to include a choice-of-law provision. Although the Funds are incorporated in Maryland, the question of venue is typically a procedural issue. Thus, it is somewhat unclear what law applies in interpreting the bylaws. *See Irsik & Doll Feed Servs., Inc. v. Roberts Enters. Invs., Inc.*, 2016 WL 3405175, at *3 (D. Kan. 2016) ("Because contracts designating a place of jurisdiction or venue may implicate both state substantive law and federal procedural law, courts have struggled with which law to apply, and the Tenth Circuit has not issued a definitive statement regarding the issue."). However, because the analysis turns on the plain language of the bylaws, which is a universal precept of contract interpretation, the Court does not decide this issue.

Here, the Funds' bylaws have two relevant provisions: subsection (b), which refers to "any derivative action or proceeding brought on behalf of the Corporation, other than actions arising under federal securities laws," and subsection (c), which refers to "any action asserting a claim of breach of any duty owed by any director or officer or other employee of the Corporation to the Corporation or to the stockholders of the Corporation." Under these provisions, such actions, with the exception of actions arising under federal securities law, must be brought in Maryland state court or Maryland federal court if the state court lacks jurisdiction. Doc 29-9 at 11.

Plaintiffs bring a derivative action. Doc. 1 at ¶ 116. One claim arises under federal securities law, and the other claim arises under Maryland law. *See* Doc. 34 at 7. Plaintiffs argue the existence of a claim arising under federal securities law makes the forum-selection clause inapplicable under the carve-out in subsection (b). *Id.* at 26-27. But the Court is not convinced the carve-out applies. Subsection (b) excepts "<u>actions</u> arising under federal securities laws." As Plaintiffs note, the terms "action" and "claim" are not interchangeable. *See* Doc. 34 at 27 n.16. Although one of Plaintiffs' <u>claims</u> ostensibly arises under federal securities law, it's not clear that the <u>action</u> does, as Plaintiffs' other derivative claim arises under Maryland state law. *See* Doc. 1 at ¶ 133.[4]

In contrast, subsection (c) of the forum-selection clause clearly does apply. Subsection (c) states that "any <u>action</u> asserting a <u>claim</u> of breach of any duty owed" must be brought in Maryland. Doc. 29-9 at 11. This action includes exactly such a claim. *Id.* ¶¶ 132-45; *see also* Doc. 34 at 7. Although Plaintiffs argue that applying subsection (c) would render meaningless the carve out in

---

[4] The Court notes Defendants' argument that Plaintiffs' claim under federal securities law fails to state a claim and effectively only argues a breach of fiduciary duty. But it need not reach that issue. Even if Plaintiffs did assert a plausible <u>claim</u> under federal securities law, the forum-selection clauses would still be enforceable for the reasons discussed above.

subsection (b) for actions arising under federal securities law, the opposite is actually true.[5] Under Plaintiffs' interpretation, a party could file an action that includes both federal and state claims and avoid the forum-selection clause even though subsection (c) contemplates exactly such a situation and mandates that such <u>actions</u> be brought in Maryland.[6] Given the strong public policy preference in favor of enforcing forum-selection clauses, courts have disapproved of such "artful pleading to avoid enforcement of the forum-selection clause." *Kelvion, Inc.*, 918 F.3d at 1093-94. Further, the last sentence of the forum-selection clause states that "[n]one of the foregoing actions, claims or proceedings may be brought in any court sitting outside the State of Maryland unless the Corporation consents in writing to such court." Doc. 29-9 at 11. Plaintiffs' interpretation of the clause and their action in filing the breach-of-fiduciary-duty claim in Kansas cannot be reconciled with this provision.[7]

Accordingly, the forum-selection clauses in the Funds' bylaws apply to this action. As noted above, if a forum-selection clause is applicable, the party resisting enforcement bears the burden of showing that the provision is invalid due to fraud or overreaching, or that it would be unreasonable or unjust to enforce the provision. *K.R.W. Constr., Inc.*, 598 F. Supp. 3d at 1136.

---

[5] Plaintiffs also argue that Defendants waived any argument that subsection (c) applies. The Court disagrees. Although Defendants could have perhaps been clearer in their argument, their motion cites both provisions.

[6] Plaintiffs argue that the Court has original jurisdiction over their federal securities claim in Count 1 and supplemental jurisdiction over their state-law claim in Count 2. As Defendants note, that may be correct, but subject-matter jurisdiction is a separate matter from venue, especially where a forum-selection clause applies. Many courts may have jurisdiction over a particular claim or action and can also be proper venues. But a plaintiff bound by a mandatory forum-selection clause cannot fall back on general principles of jurisdiction or venue to evade that clause. *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (discussing mandatory forum-selection clauses that state venue is appropriate <u>only</u> in a particular forum, versus permissive forum-selection clauses that authorize litigation in a given forum but do not prohibit it elsewhere). The clauses at issue here are mandatory, *see id.*, and therefore regardless of this Court's jurisdiction over Plaintiffs' claim, this Court is not a proper venue under the bylaws.

[7] Neither party suggests the claims should be split between two forums.

Here, Plaintiffs make no argument that the provisions are invalid due to fraud or overreaching, or that it would be unjust to enforce them. Accordingly, the forum-selection clauses are enforceable.

**B.     Dismissal is appropriate under forum non conveniens.**

As discussed, a typical forum non conveniens analysis involves two steps. "Generally, forum non conveniens is proper when an adequate alternative forum is available and public- and private-interest factors weigh in favor of dismissal." *Kelvion, Inc.*, 918 F.3d at 1091. But because forum-selection clauses apply, the second step of the analysis focuses only on public-interest factors. *Atl. Marine Const. Co.*, 571 U.S. at 63-64.

Here, neither party disputes that an adequate alternative forum exists in Maryland. Thus, the Court turns to the public-interest factors, which include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const. Co.*, 571 U.S. at 62 n.6 (internal quotation and citation omitted). The Tenth Circuit has also considered "the burden of jury duty on members of a community with no connection to the litigation." *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1180 (10th Cir. 2009) (internal quotation and citation omitted).

Neither party discusses these factors. But as the party opposing enforcement of the forum-selection clauses, it is Plaintiffs' burden to show why they weigh against dismissal. *See Atl. Marine Const. Co.*, 571 U.S. at 63-64. Their failure to address these factors thus effectively decides the issue. But even considering these factors, the Court sees no reason why they would apply to contravene the applicable and enforceable forum-selection clauses. This case involves entities incorporated under Maryland law, and at least one claim is based on Maryland law. Maryland courts would be better suited to resolve those issues. Although some Defendants are based in

Kansas and some claims may have a factual link to Kansas, this is not sufficient grounds to discard the forum-selection clauses. A valid forum-selection clause will control in all but the most exceptional cases. *Id*. This case, which is still in the very early stages, is not such an exceptional case.

Accordingly, this action must be dismissed under the doctrine of forum non conveniens. The Court does not reach the merits of the remaining arguments in the motion to dismiss.

### III. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. 28) is GRANTED. This case is DISMISSED WITHOUT PREJUICE.[8]

IT IS SO ORDERED.

Dated: February 1, 2023        /s/ *Holly L. Teeter*
                                HOLLY L. TEETER
                                UNITED STATES DISTRICT JUDGE

---

[8] "Forum non conveniens is a non-merits ground for dismissal." *DML Bakeries, Inc.*, 2020 WL 8181704, at *2 (internal quotation and citation omitted).